**[This opinion has been published in *Ohio Official Reports* at 89 Ohio St.3d 497.]**

OFFICE OF DISCIPLINARY COUNSEL *v*. EVANS.

**[Cite as *Disciplinary Counsel v. Evans*, 2000-Ohio-227.]**

*Judges—Misconduct—Six-month stayed suspension—Judicial candidate fails to maintain the dignity appropriate to judicial office—Failing to have campaign committee file required contribution and expenditure statements with clerk of court—Knowingly or with reckless regard publishing information concerning an opponent that would be deceiving or misleading to a reasonable person.*

(No. 00-348—Submitted May 23, 2000—Decided August 30, 2000.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 99-01.

_____

{¶ 1} On September 20, 1999, relator, Disciplinary Counsel filed a five-count amended complaint against respondent, Judge David T. Evans of Gallipolis, Ohio, Attorney Registration No. 0021152. Respondent answered, and the matter was heard by a panel of the Board of Commissioners on Grievances and Discipline of the Supreme Court. The panel considered stipulations of fact and of violations of the Code of Judicial Conduct, testimony submitted at the hearing, and numerous letters attesting to respondent's character and standing in the community. Counts II, IV, and V were dismissed by the relator.

{¶ 2} Respondent became an attorney in 1975. He practiced law for twenty-three years as a sole practitioner. In 1982, respondent was elected to the Republican Party's central committee in Gallia County. Thereafter, he served ten years as the chairman of the executive committee, resigning in 1994. In that capacity, he helped select candidates for campaigns and advised them on their responsibilities.

**{¶ 3}** In late 1997, respondent decided to run for a vacant seat on the Fourth District Court of Appeals.[1]  Respondent's neighbor and friend, Curtis "Chuck" Gilliam, assisted him during his primary campaign.  Gilliam's friend, Roger Watson, a Guyan Township trustee in Gallia County, also worked on respondent's campaign.  Watson suggested to Gilliam that he would be willing to construct political signs for respondent's campaign if the lumber would then be donated to his township after the election.  Gilliam relayed this proposal to respondent. Respondent, who was pleased that the proposal involved free labor for the preparation of his four-by-four-foot and four-by-eight-foot campaign signs, told Gilliam to go ahead and take responsibility for the sign preparation.  The source of the free labor turned out to be jail inmates on work release and welfare recipients assigned to work for the township.

**{¶ 4}** Respondent testified that he was not present at the township garage when work on the signs was performed.  However, Gilliam visited the garage on at least three occasions.  On his third visit to the garage, Gilliam became concerned about rainwater in the garage and the lack of space.  Gilliam discussed his concerns with respondent, and as a result of this conversation, respondent arranged for the sign preparation to move to a larger, private warehouse in Gallipolis.  The sign preparation continued at this new location for approximately two weeks.

**{¶ 5}** Gilliam met Watson and four workers on the first day the Gallipolis warehouse was used.  Thereafter, during the two-week period when work was performed at that location, Gilliam would stop by the warehouse three or four times a week and would stay approximately fifteen minutes.  On one occasion respondent visited the Gallipolis location and met some of the workers, all of whom were clad in street clothes.

---

1. The Fourth District incorporates fourteen counties in the southeast part of the state: Pickaway, Ross, Highland, Adams, Pike, Scioto, Jackson, Lawrence, Vinton, Hocking, Gallia, Meigs, Athens, and Washington.

{¶ 6} Philip Bailey, the only full-time township employee, also worked on the signs. Bailey used the township truck to transport the inmates and welfare workers to and from the warehouse. Watson and Gilliam also transported the workers to and from the warehouse. On at least two occasions, Gilliam picked up a worker at his residence and then stopped near the courthouse in Gallipolis while the worker went and got two additional workers. On the second occasion that Gilliam provided transportation to the workers, he dropped off two workers outside the jail attached to the courthouse. Gilliam asserted that it was then that he realized some of the workers were inmates.

{¶ 7} Gilliam asserted that he then advised respondent that inmates were preparing signs at the warehouse. Respondent asserted that this was the first time he learned that inmates were working on his signs. Respondent ordered that the work be halted immediately. No further work was done on his signs until after the primary, when a college student completed the signs at the warehouse. However, respondent used the signs that had been completed thus far in his campaign. On April 22 and June 2, 1998, the respondent's campaign filed campaign finance reports with the board of elections that did not mention the contribution of the township facilities or the labor provided by jail inmates or welfare workers in the construction of the campaign signs.

{¶ 8} Respondent admitted that his lack of close supervision of Gilliam's activities relating to the construction of the signs violated Canon 7(B)(1) of the Code of Judicial Conduct (a judicial candidate shall maintain the dignity appropriate to judicial office). Respondent also admitted that the failure to report the contributions by the township for the use of the township garage and the value of the labor of the inmates and welfare workers was a violation of Canon 7(C)(9) (the campaign committee of a judicial candidate shall file a copy of all contribution and expenditure statements specified in R.C. 3517.10[A] with the clerk of court).

**{¶ 9}** In mitigation, respondent expressed regret. In addition, he stated that he did not include the value of the free labor or the use of township property in the campaign financial reports because he did not know how to do so. He stated that he had tried to ameliorate the problem by having his counsel write to the Scioto County Board of Elections for advice on how to report those contributions. However, the panel and the board found that this letter was sent only after respondent had received a draft complaint from Disciplinary Counsel stating proposed charges against him based on the failure to report these contributions.

**{¶ 10}** Also during respondent's primary campaign, respondent used literature, print, radio, and television advertisements, and telephone scripts that stated that he was "Endorsed by Southern Ohio's Top Prosecutors and Sheriffs!" At the time the advertisements were created and distributed, only five of the fourteen sheriffs and three of the fourteen county prosecuting attorneys in the Fourth Appellate District had endorsed or supported respondent.

**{¶ 11}** In June 1998, Judge Milton Nuzum and Judge Marshall Brown Douthett, who had been respondent's primary opponents, filed a grievance with the Board of Commissioners under Gov.Jud.R. II(5) (fast-track campaign-violations review). In July 1998, Judges Nuzum and Douthett filed a motion with the board to refer the matter to relator for investigation.[2] In September 1999, respondent filed a civil complaint against Judges Nuzum and Douthett, among others. One count of this complaint alleged that Judges Nuzum and Douthett had libeled and slandered respondent and had intentionally filed false allegations with the Board of Commissioners. Two months later, at his disciplinary hearing, respondent conceded that his exaggeration of his endorsements was a violation of Canon 7(B)(1) (a judicial candidate shall maintain the dignity appropriate to judicial office), and yet at the same time he testified that he was entitled to maintain his

---

2. This case results from this investigation.

civil suit against the judges for falsely accusing him in their grievance filed with the Board of Commissioners.

{¶ 12} In mitigation, respondent testified that he regretted the exaggeration and that when it was brought to his attention before the primary that there was some difficulty with it, he changed his telephone and radio scripts to state that he was endorsed by "many of Ohio's top sheriffs and prosecutors." The postprimary printed ads were also changed.

{¶ 13} In addition to the stipulated violation, the panel also found that respondent's endorsement language violated Canon 7(E)(1) (a candidate "shall not knowingly or with reckless regard * * * publish * * * information concerning a judicial candidate or an opponent, either knowing the information to be false or with reckless disregard of whether or not it was false or, if true, that would be deceiving or misleading to a reasonable person").

{¶ 14} The panel found several aggravating circumstances, most notably respondent's actions in admitting violations of the Code of Judicial Conduct yet proceeding with a lawsuit against Judges Douthett and Nuzum. The panel stated that while respondent signed and testified to admissions of ethical violations at the time of the hearing, he also believed that he had the right to pursue civil litigation against the judges for "intentionally fil[ing] false charges," charges that the panel regarded as now admitted. The panel thus concluded that there was a serious question as to respondent's sincerity and candor in his admissions. The panel found that the other actions that respondent claimed to be mitigating, *i.e.,* changing his ads and consulting the board of elections about reporting contributions, were taken only in response to notice of a complaint to be filed against him rather than as a result of any recognition of wrongdoing on his part. Moreover, the panel believed that the modified ads were just as inaccurate and misleading to a reasonable person as the original statement.

**{¶ 15}** The panel recommended a six-month stayed suspension. The board, however, recommended a six-month suspension without a stay. The board stated that it based its recommendation on respondent's proven knowledge of the improper activity, the lack of timely, good faith mitigation, and the initiation and continuation of a civil action against the judges who filed the original grievance against him. Moreover, the board determined that respondent showed no remorse for his violations.

———————————

*Jonathan E. Coughlan*, Disciplinary Counsel, for relator.

*Don C. Iler Co., L.P.A.,* and *Don C. Iler; Buckley, King & Bluso* and *John A. Hallbauer*, for respondent.

———————————

**FRANCIS E. SWEENEY, SR., J.**

**{¶ 16}** We adopt the board's findings and conclusions that respondent violated Canon 7(B)(1), (C)(9), and (E)(1). However, after thoroughly considering the evidence in this case, we adopt the panel's recommended sanction rather than the board's recommended sanction.

**{¶ 17}** When deciding what sanction to impose, we consider the duties violated, respondent's mental state, the injury caused, the existence of aggravating or mitigating circumstances, and applicable precedent. *Warren Cty. Bar Assn. v. Bunce* (1998), 81 Ohio St.3d 112, 115, 689 N.E.2d 566, 568; *Disciplinary Counsel v. Brown* (1999), 87 Ohio St.3d 316, 320, 720 N.E.2d 525, 528. With respect to the aggravating or mitigating circumstances, we are guided by the recent Amendments to the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline of the Supreme Court, Section 10, Guidelines for Imposing Lawyer Sanctions. Ohio Official Reports, June 19, 2000, Advance Sheets, xix.

{¶ 18} One aggravating circumstance listed in Section 10 of these guidelines is the refusal to acknowledge the wrongful nature of the conduct. Section 10(B)(1)(g). Like the board, we believe that this aggravating circumstance is present here. Although respondent admitted that his misleading endorsement statements violated Canon 7(B)(1), he filed a civil lawsuit against the judges who had initiated a grievance against him based in part on the endorsements. This action was still pending at the time of the disciplinary hearing. The existence of this lawsuit contrasts with respondent's admissions that his campaign endorsements were misleading. Instead, it supports a finding that despite his stipulated admissions, respondent did not really believe that his conduct was wrong. The board was justified in finding this to be an aggravating circumstance. However, respondent now asks this court to allow him to avoid responsibility for his actions and blames his predicament on his prior counsel. He asserts that the civil suit was not instigated by him, but rather by his attorneys from the law firm of Chester, Wilcox & Saxbe, a firm, he asserts, that was disqualified from representing him due to a conflict of interest. We reject respondent's attempt to escape responsibility for the filing of the lawsuit.

{¶ 19} Respondent, as the client, made the ultimate decision as to whether a lawsuit should be filed. In this regard, we note that respondent is not a typical client. He has been an attorney for over twenty-five years, and now serves as a judge on the Fourth District Court of Appeals. Moreover, due to his many years of service as a Republican Party's central committee executive chairman, he is well versed in the mechanics of operating a political campaign. He is aware of, or should be aware of, the rules governing campaign advertising. Thus, we find that this after-the-fact attempt to disclaim responsibility is further proof that respondent still does not acknowledge his wrongful conduct.

{¶ 20} We also question respondent's asserted lack of knowledge as to the source of the free labor used in the preparation of his campaign signs. The

stipulations reveal that respondent knew that the labor for the signs was being provided in exchange for the lumber being donated to Guyan Township and that the signs were being constructed at the Guyan Township garage. The stipulations also reveal that respondent's good friend and neighbor, Gilliam, was put in charge of this campaign detail. Gilliam visited the work sites on several occasions and even transported workers at times. Respondent himself visited the workers at the warehouse on one occasion. Thus, it strains credibility to argue that the source of this free labor was realized only when jail inmates were actually shuttled to the jail. However, at the very least, even assuming respondent did not know that jail inmates and welfare workers prepared his signs, we find that respondent's failure to investigate the source of the free labor or supervise Gilliam's activities in the construction of the signs violated Canon 7(B)(1).

{¶ 21} Additionally, the failure to report the free contributions once he learned of them violated Canon 7(C)(9). This canon is designed to mandate the disclosure of all contributions by judicial candidates and to make such information accessible to the public by requiring the information to be filed with the clerk of court in each county in the district. While respondent claims that he immediately halted the sign preparation as soon as he learned the source of the labor, he made no attempt to determine what he should report as contributions until he received relator's draft complaint after the general election was over. Even then, upon receiving no response to his letter to the board of elections, respondent took no further action. The responsibility of reporting contributions is respondent's, not the board of elections.

{¶ 22} In mitigation, we note the absence of a prior disciplinary record and consider the nine letters offered in support of respondent's character and reputation. We also consider this misconduct to be isolated, arising only in the context of respondent's political campaign.

{¶ 23} As applicable precedent, we consider other cases involving election campaign violations. See, *e.g., In re Judicial Campaign Complaint Against Hildebrandt* (1997), 82 Ohio Misc.2d 1, 675 N.E.2d 889 (inaccurate disparaging campaign statements justified a six-month stayed suspension); *In re Complaint Against Harper* (1996), 77 Ohio St.3d 211, 673 N.E.2d 1253 (a misleading disparaging television campaign advertisement justified only a public reprimand in light of Judge Harper's many years of distinguished public service). See, also, *In re Judicial Campaign Complaint Against Burick* (1999), 95 Ohio Misc.2d 1, 705 N.E.2d 422; *In re Judicial Campaign Complaint Against Roberts* (1996), 81 Ohio Misc.2d 59, 675 N.E.2d 84 (misleading campaign advertisements concerning endorsements justified a public reprimand and/or fine).[3]

{¶ 24} In light of the seriousness of respondent's misconduct and the aggravating circumstances, we believe that a six-month stayed suspension is an appropriate sanction. Therefore, respondent is hereby given a six-month stayed suspension. Costs taxed to respondent.

*Judgment accordingly.*

KARPINSKI, Brogan and LUNDBERG STRATTON, JJ., concur.

RESNICK, ACTING C.J., and CHRISTLEY, J., concur in part and dissent in part.

COOK, J., dissents.

JUDITH A. CHRISTLEY, J., of the Eleventh Appellate District, sitting for MOYER, C.J.

DIANE KARPINSKI, J., of the Eighth Appellate District, sitting for DOUGLAS, J.

JAMES A. BROGAN, J., of the Second Appellate District, sitting for PFEIFER, J.

---

3. The sanction of a fine is available in fast-track campaign-violations review cases pursuant to Gov. Jud.R. II(5)(E)(1)(c). A fine is not a permissible sanction in a regular disciplinary proceeding. Gov.Bar R. V(6)(B).

————————————

**CHRISTLEY, J., concurring in part and dissenting in part.**

{¶ 25} While I concur in the majority's adoption of the board's findings and conclusion that the respondent violated Canon 7(B)(1), 7(C)(9), and 7(E)(1), I respectfully dissent as to the lesser sanction imposed.

{¶ 26} The board had it right. Thus, I concur in part and dissent in part.

RESNICK, ACTING C.J., concurs in the foregoing opinion.

————————————

**COOK, J., dissenting.**

{¶ 27} The aggravating factors present in this case warrant the sanction recommended by the board. I, therefore, respectfully dissent.

CHRISTLEY, J., concurs in the foregoing dissenting opinion.

————————————