**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Disciplinary Counsel v. Tregre*, **Slip Opinion No. 2024-Ohio-3173.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2024-OHIO-3173

DISCIPLINARY COUNSEL *v*. TREGRE.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Tregre*, Slip Opinion No. 2024-Ohio-3173.]**

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct, including failing to act with reasonable diligence in representing a client, failing to deposit advance legal fees and expenses into a client trust account, and engaging in conduct prejudicial to the administration of justice—Two-year suspension and restitution ordered.*

(No. 2024-0493—Submitted May 7, 2024—Decided August 23, 2024.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2023-025.

_____

The per curiam opinion below was joined by FISCHER, DEWINE, DONNELLY, and STEWART, JJ.  KENNEDY, C.J., concurred in part and dissented in part, with an opinion joined by DETERS, J.  BRUNNER, J., did not participate.

**Per Curiam.**

{¶ 1} Respondent, Calvin Sylvester Tregre Jr., of Cincinnati, Ohio, Attorney Registration No. 0073454, was admitted to the practice of law in Ohio in 2001. In a September 2023 complaint, relator, disciplinary counsel, charged Tregre with multiple professional-conduct violations arising from his alleged neglect of five separate client matters, failure to reasonably communicate with the affected clients, failure to properly handle two retainers, and initial failure to cooperate in the resulting disciplinary investigation. The parties submitted stipulations of fact, misconduct, and aggravating and mitigating factors, along with 66 stipulated exhibits.

{¶ 2} After conducting a hearing, a panel of the Board of Professional Conduct issued a report in which it found by clear and convincing evidence that Tregre had committed the charged misconduct and recommended that we suspend him from the practice of law for two years, order him to make restitution to two clients, and order him to pay the costs of these proceedings. The panel also recommended that Tregre's reinstatement be conditioned on the completion of three hours of continuing legal education ("CLE") focused on law-office management and that he be required to serve a one-year period of monitored probation. The board adopted the panel's findings and recommendations. No objections have been filed. For the reasons that follow, we adopt the board's findings of misconduct and recommended sanction.

## MISCONDUCT

### Count One—The Bennett Matter

{¶ 3} The parties stipulated and the board found that in July 2020, Carla R. Bennett and Arlisa E. Chatman retained Tregre to pursue a wrongful-death action against the nursing home where their mother, Sarah E. Green, died on April 8, 2020. However, only Bennett signed the contingent-fee agreement.

**{¶ 4}** In August 2020, Tregre filed an application for authority to administer Green's estate, along with several other forms, in the Hamilton County Probate Court. He alleged that the estate was being opened to pursue a wrongful-death or survival action and that there were no other assets to administer. Bennett was appointed administrator of the estate. After later learning that Green had owned two cars at the time of her death, Tregre filed several amended forms to disclose the existence of those assets and transfer title of the cars. Tregre also prepared letters for Bennett to request medical and billing records from three facilities where Green had been treated. Although Tregre told Bennett that he would send the letters to the medical facilities, he did not send them and neither he nor Bennett received the records.

**{¶ 5}** Although Tregre assured Bennett that he was working on the case and that he would take care of the filings, he did not timely file the inventory, account, and certificate of fee agreement in accordance with the applicable statutes and a local rule. *See* R.C. 2115.02 and 2109.301(B)(1); Hamilton Cty. Probate R. 71.1. The probate court sent Tregre and Bennett delinquency notices regarding the overdue fee-agreement and estate-inventory documents, and Tregre finally filed the certificate of fee agreement more than two months late. However, he did not respond to several other delinquency notices sent to him by the court bearing extended deadlines for the inventory and account; and on at least one occasion, Tregre disregarded an order to appear.

**{¶ 6}** In April 2021, the probate court dismissed Green's estate case for failure to prosecute. Tregre did not fully investigate Bennett's wrongful-death claim. Nor did he file a complaint or advise Bennett that her claim had no merit. Bennett terminated Tregre's representation after he stopped responding to her calls and text messages.

**{¶ 7}** The parties stipulated and the board found that Tregre's conduct violated Prof.Cond.R. 1.3 (requiring a lawyer to act with reasonable diligence and

3

promptness in representing a client), 1.4(a)(3) (requiring a lawyer to keep a client reasonably informed about the status of a matter), 1.4(a)(4) (requiring a lawyer to comply as soon as practicable with a client's reasonable requests for information), and 8.4(d) (prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice). We adopt these findings of misconduct.

### Counts Two and Three—The Bossie/Holliday and Landrum Matters

{¶ 8} Phillip O. Bossie Jr. died on July 2, 2019, after surgery at a Cincinnati hospital. Shortly thereafter, his wife, Carla Bossie, retained Tregre to pursue a wrongful-death action. Tregre later agreed to pursue an additional wrongful-death claim on behalf of Phillip's mother, Bertha Holliday. Tregre stopped responding to Bossie's and Holliday's text messages and emails in late April 2021. Frustrated by their inability to reach him, they tried to retain new counsel but were informed that the statute of limitations for their claims had expired on July 2, 2021—two years after Phillip's death, *see* R.C. 2125.02(F)(1).

{¶ 9} Tregre engaged in similar misconduct while representing Gwinette Landrum in a medical-malpractice matter arising from an April 8, 2021 back surgery. Landrum retained Tregre on June 14, 2021, and from mid-August through mid-October 2021, Tregre spoke briefly with Landrum on the phone and met with her one time in her home, but he canceled one other meeting with her. In a November 2021 letter to Landrum's surgeon, Tregre notified the surgeon of his representation, provided a notice to preserve evidence, and asked the surgeon to have his legal counsel or insurance representative contact Tregre. After Tregre failed to offer substantive information in response to Landrum's repeated efforts to contact him over a period of months, Landrum sent him two letters by certified mail, both of which went unanswered. Tregre never filed a lawsuit on Landrum's behalf.

{¶ 10} The parties stipulated and the board found that Tregre's conduct in the Bossie/Holliday and the Landrum matters violated Prof.Cond.R. 1.3, 1.4(a)(3),

and 1.4(a)(4), and that his conduct in the Bossie/Holliday matter also violated Prof.Cond.R. 1.4(b) (requiring a lawyer to explain a matter to the extent reasonably necessary for the client to make informed decisions regarding the representation). We adopt these findings of misconduct.

### Count Four—The Hudgel Matter

{¶ 11} In October 2020, Mari Jo Hudgel retained Tregre to open an estate for her father, Percy P. Peckhem Jr., who died intestate in January 1999. The purpose of the estate was to obtain probate-court approval to distribute the proceeds of a confidential, precomplaint wrongful-death settlement that had already been negotiated by Wagstaff & Cartmell, L.L.P., a Missouri law firm. Hudgel, who was Peckhem's only next of kin, signed a fee agreement with Tregre in which she authorized Wagstaff & Cartmell to pay Tregre a $2,500 retainer, from which he was to be paid a rate of $250 per hour, drawn from the retainer as the legal work was performed. The agreement further stated that Tregre agreed to "***cap his attorney's fees at $2,500.00***." (Boldface and emphasis in original.)

{¶ 12} Tregre received a $2,500 check from Wagstaff & Cartmell and deposited it into his client trust account on October 12, 2021, bringing the account balance to $2,506.39. Within a week, Tregre had paid the entire $2,500 retainer to himself even though he had not earned the fee or received probate-court approval to pay his fee, as required by Warren Cty. Probate R. 24(A).

{¶ 13} Tregre filed an application to open Peckhem's estate in the Warren County Probate Court on October 27, 2021, and the court appointed Hudgel as the estate's administrator the following day. In November 2022, the probate court issued notices to Tregre and Hudgel explaining that the estate's annual status-update report was past due. Later that month, Tregre filed a status report in which he and Hudgel represented that the underlying wrongful-death action had been settled but that a lien-resolution process was pending, thereby preventing

disbursement of proceeds from the underlying claim. Tregre and Hudgel asked that the estate remain open for an additional year.

{¶ 14} In December 2022, Hudgel signed a post-lien indemnification agreement, in which she acknowledged that her settlement proceeds would be subject to a $10,000 temporary holdback to satisfy any potential Medicare lien. Later that month, Tregre told Hudgel that he would be filing the necessary paperwork with the probate court sometime that week. But he did not meet with Hudgel to review that paperwork until mid-January 2023. A few days after that meeting, Tregre represented that he would file the documents "hopefully today." But he did not file the documents and stopped responding to emails and voicemail messages from Hudgel and a Wagstaff & Cartmell attorney.

{¶ 15} Hudgel retained another attorney to complete the estate administration. Tregre did not respond to that attorney's requests for Hudgel's file, an itemized billing statement, and a refund of the unearned portion of Hudgel's retainer. Although Tregre did not complete the representation, he had not refunded any portion of Hudgel's $2,500 retainer at the time of his disciplinary hearing.

{¶ 16} The parties stipulated and the board found that Tregre's conduct violated Prof.Cond.R. 1.3, 1.4(a)(3), 1.4(a)(4), 1.15(c) (requiring a lawyer to deposit advance legal fees and expenses into a client trust account, to be withdrawn by the lawyer only as fees are earned or expenses incurred), 1.16(d) (requiring a lawyer to promptly deliver client papers and property as part of the termination of representation), 1.16(e) (requiring a lawyer to promptly refund any unearned fee upon the lawyer's withdrawal from employment), and 8.4(d).

### Count Five—The Landingham Matter

{¶ 17} In March or April 2022, Anthony Landingham retained Tregre to represent him in a workplace-discrimination action. Their fee agreement required Landingham to pay a retainer of $2,250 and stated that Tregre would be paid $250 per hour as his legal work was performed. Tregre deposited Landingham's cash

payment into his client trust account on April 19. Within six days of receiving the retainer, he paid himself $2,200, leaving a balance of just $53.83 in his client trust account. And on May 2, he withdrew the remainder of the retainer.

{¶ 18} Despite repeated attempts, Landingham was not able to reach Tregre by telephone or text message for nearly a year. Tregre finally met with Landingham in March 2023 and stated that he would be filing a complaint with the Ohio Civil Rights Commission. But he once again stopped responding to Landingham's efforts to communicate with him and never filed Landingham's complaint or refunded any portion of the $2,250 retainer.

{¶ 19} The parties stipulated and the board found that Tregre's conduct violated Prof.Cond.R. 1.3, 1.4(a)(3), 1.4(a)(4), 1.15(c), and 1.16(e). We adopt these findings of misconduct.

### Count Six—Failure to Cooperate

{¶ 20} From October 2021 through July 2023, relator investigated the misconduct described above and sent Tregre multiple letters of inquiry by mail, email, and hand delivery. Relator also telephoned Tregre, issued subpoenas duces tecum, and scheduled depositions. Tregre sought and obtained multiple extensions of time to respond to those inquiries, and he met with relator in March 2022 and March 2023. Although Tregre twice appeared pursuant to subpoena and promised to provide requested documents, he did not participate in relator's investigation in any meaningful way. Indeed, as of the filing of the formal complaint, he had not submitted *any* written responses to relator's letters of inquiry or provided *any* of the requested documentation. The parties therefore stipulated and the board found that Tregre's conduct violated Prof.Cond.R. 8.1(b) (prohibiting a lawyer from failing to disclose a material fact or knowingly failing to respond to a demand for information by a disciplinary authority during an investigation). We adopt this finding of misconduct.

**SANCTION**

{¶ 21} When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

{¶ 22} As for aggravating factors, the parties stipulated that Tregre engaged in a pattern of misconduct, committed multiple offenses, failed to cooperate in the ensuing disciplinary process, and has failed to make restitution of $2,500 to Hudgel and $2,250 to Landingham. *See* Gov.Bar R. V(13)(B)(3), (4), (5), and (9). The board also found that Tregre acted with a dishonest or selfish motive and caused harm to vulnerable clients. *See* Gov.Bar R. V(13)(B)(2) and (8).

{¶ 23} As for mitigation, the parties stipulated that Tregre has a clean disciplinary record. *See* Gov.Bar R. V(13)(C)(1). The board adopted that finding and also credited Tregre for his full and free disclosure to the board and cooperative attitude toward the disciplinary proceedings *after* the complaint was filed. *See* Gov.Bar R. V(13)(C)(4). Additionally, Tregre testified that he had been seeing a mental-health counselor, but he did not submit any information regarding his treatment.

{¶ 24} The board noted that Tregre had practiced law for approximately 18 years without incident before his misconduct began in 2019. When questioned by a panel member about what had changed to cause his downward spiral, Tregre testified that his wife had suffered a catastrophic medical crisis in 2017 that left her with significant disabilities and in need of constant care. Following the initial crisis, Tregre lost two jobs before starting his own law firm and commencing his solo practice, and all of the misconduct addressed herein occurred between 2020 and 2023 while he was a sole practitioner. Tregre explained that he has been his wife's caregiver since the onset of her medical condition, and that she had suffered two

major setbacks during the time in which his misconduct occurred—though he did not attempt to excuse his behavior on that ground.

{¶ 25} The board recognized that Tregre's circumstances do not fall within any of the mitigating factors specifically enumerated in Gov.Bar R. V(13)(C). However, recognizing that Gov.Bar R. V(13)(A) directs it to consider "all relevant factors" in determining the appropriate sanction for an attorney's misconduct, the board accorded those circumstances some mitigating effect. *See Disciplinary Counsel v. Evans*, 89 Ohio St.3d 497, 501 (2000) (stating that an attorney's "mental state" is one factor to be considered in determining the appropriate sanction for the attorney's misconduct).

{¶ 26} In determining the appropriate sanction to recommend for Tregre's misconduct—which includes 24 separate rule violations, including two violations of Prof.Cond.R. 8.4(d), and the failure to make restitution to two clients—the board began its analysis by considering four cases cited by relator to support the imposition of an indefinite suspension. *See Disciplinary Counsel v. Golden*, 2002-Ohio-5934; *Cleveland Bar Assn. v. Kodish*, 2006-Ohio-4090; *Cincinnati Bar Assn. v. Fernandez*, 2018-Ohio-3828; *Disciplinary Counsel v. Vick*, 2022-Ohio-2541.

{¶ 27} The attorney in *Golden* committed roughly 40 rule violations in her handling of eight separate client matters over a period of approximately six years. *Golden* at ¶ 3-7, 12-14, 17, 21. Golden neglected six separate client matters, *id*. at ¶ 3, 4, 5, 6, 13, 14, failed to carry out six contracts of employment, *id*. at ¶ 3, 4, 5, 6, 13, 17, 21, and failed to promptly refund unearned fees to two clients upon the termination of her employment, *id*. at ¶ 3, 4.

{¶ 28} In contrast to Tregre, Golden engaged in multiple instances of dishonesty by misleading clients about the status of their legal matters, falsifying a court order, and falsely representing that payments she personally made to a client were the result of pending litigation. *Id.* at ¶ 4, 5, 6, 8-12, 16-17. She also engaged in four instances of conduct that was prejudicial to the administration of justice

(compared to just two in this case), *id*. at ¶ 5, 6, 12, 17, and provided improper financial assistance to two clients, *id*. at ¶ 12, 17, among other violations. Like Tregre, Golden had failed to cooperate in the ensuing disciplinary investigations until after the relator filed its formal complaint. *Id*. at ¶ 3, 4, 6, 17, 18, 21.

{¶ 29} The aggravating factors in *Golden*, 2002-Ohio-5934, are comparable to those present in this case. *Id*. at ¶ 18, 22-23. As for mitigation, Golden, like Tregre, had no prior discipline, but Golden also made restitution to her clients before her disciplinary hearing and established the existence of a qualifying mental disorder. *Id.* at ¶ 18-19. We indefinitely suspended Golden from the practice of law and conditioned her reinstatement on the submission of medical proof that she was competent to resume the practice of law. *Id*. at ¶ 25.

{¶ 30} The attorney in *Kodish*, 2006-Ohio-4090, committed 18 ethical violations in her representation of more than ten clients, primarily in bankruptcy proceedings. *Id*. at ¶ 63-68. She neglected six separate client matters, represented allied companies and individuals in separate bankruptcy proceedings without obtaining informed consent regarding their conflicting interests, refused to account for a bankruptcy client's fee, and negotiated with a client in an attempt to limit liability for her professional misconduct. *Id*. at ¶ 70. Kodish also engaged in a sexual relationship with the representative of two of her corporate clients. *Id*. at ¶ 65.

{¶ 31} In addition to many of the same aggravating factors present in this case, Kodish failed to acknowledge the wrongfulness of her misconduct. *Id.* at ¶ 56-58. Citing her "chronic indifference to her clients' interests" and her "failure to show appreciation for the breadth of her transgressions," this court indefinitely suspended Kodish from the practice of law. *Id.* at ¶ 70-71.

{¶ 32} The attorney in *Fernandez*, 2018-Ohio-3828, accepted referrals from an out-of-state company that provided paralegal and paraprofessional services to his law practice. He neglected three client matters referred to him by the company,

failed to exercise independent judgment and render candid advice to his clients, and abdicated his duty to safeguard the client funds entrusted to his care by the company. *Id.* at ¶ 6-11, 20. He also overdrew his client trust account, improperly retained unearned fees, and did not cooperate in the disciplinary process until after the relator filed its complaint. *Id.* at ¶ 8-11, 14, 20.

{¶ 33} As aggravating factors, Fernandez stipulated that he had a prior disciplinary offense, engaged in a pattern of misconduct, committed multiple offenses, and caused harm to his clients, who were "particularly vulnerable and in dire need of protection from [their] creditors." *Id.* at ¶ 13. In addition to finding that Fernandez had "utterly failed to respond or cooperate in any way with relator's investigation," *id.* at ¶ 14, we determined that he had acted with a selfish and dishonest motive to maximize his profit and minimize his work, *id.* at ¶ 17-18. We also declined to attribute mitigating effect to Fernandez's claimed mental disorders, noting that he had not submitted any evidence beyond his own testimony to establish their existence under Gov.Bar R. V(13)(C)(7). *Fernandez* at ¶ 21. Finding that Fernandez's selfish motive, lax business practices, poor judgment, and mental-health issues presented an ongoing danger to the public, we indefinitely suspended him from the practice of law. *Id.* at ¶ 22-23.

{¶ 34} Like Tregre, the attorney in *Vick*, 2022-Ohio-2541, neglected five client matters, failed to reasonably communicate with the affected clients, failed to deposit retainers into his client trust account, failed to promptly deliver papers and property to one client on the termination of his representation, and engaged in conduct that was prejudicial to the administration of justice. *Id.* at ¶ 9, 20. But Vick also failed to refund more than $16,000 in unearned fees upon the termination of his representation, *id.* at ¶ 31—more than three times the amount that Tregre improperly retained in this case. In addition, Vick knowingly disobeyed an obligation under the rules of a tribunal and intentionally failed to comply with a

legally proper discovery request submitted by an opposing party in a client's case, *id*. at ¶ 20—violations that were neither charged nor found in this case.

{¶ 35} The aggravating factors in *Vick* were identical to those of this case, and Vick, like Tregre, had a clean disciplinary record, *id*. at ¶ 22. We also have credited Tregre for making full and free disclosure to the board and exhibiting a cooperative attitude toward these disciplinary proceedings. But Vick received no such credit, having failed to appear at his disciplinary hearing or file a sanction brief—even after he requested and obtained an extension of time to file the brief. *Id.* at ¶ 2. We indefinitely suspended Vick from the practice of law. *Id*. at ¶ 31. We also ordered him to make restitution in excess of $16,000, complete 12 hours of CLE in law-office and client-trust-account management as a condition of his reinstatement to the practice of law, and serve a two-year period of monitored probation upon his reinstatement. *Id*.

{¶ 36} The board distinguished the facts in *Golden*, *Kodish*, *Fernandez*, and *Vick* from the facts of this case. Specifically, it noted that Golden's, Kodish's, and Vick's respective misconduct resulted in more rule violations and/or involved more clients than Tregre's did. The board also emphasized that Kodish had engaged in sexual relations with a client's representative and did not appreciate the wrongfulness of her misconduct, and it pointed out that Fernandez had had prior discipline. And Vick had failed to appear for his disciplinary hearing and owed significantly more restitution than Tregre owes to Hudgel and Landingham. On the other hand, the board recognized that Tregre has no prior discipline and that he had fully stipulated to the facts and misconduct in this case, showed genuine remorse for his misconduct, acknowledged the harm he caused to his clients, and offset his initial failure to cooperate with his full cooperation and participation before the board.

{¶ 37} While the board acknowledged that an indefinite suspension would not be unreasonable for Tregre's misconduct, it found that the facts of this case

12

were more similar to six cases in which we imposed two-year suspensions for similar acts of misconduct—namely, *Akron Bar Assn. v. Parkin*, 2018-Ohio-5093, *Columbus Bar Assn. v. Roseman*, 2019-Ohio-1850, *Toledo Bar Assn. v. Berling*, 2020-Ohio-2838, *Disciplinary Counsel v. Dougherty*, 2021-Ohio-1240, *Cincinnati Bar Assn. v. Ludwig*, 2021-Ohio-3971, and *Ohio State Bar Assn. v. Bruner*, 2021-Ohio-4048.

**{¶ 38}** Having considering those cases, the board recommends that we suspend Tregre from the practice of law for two years, order him to make restitution of $2,500 to Mari Jo Hudgel and $2,250 to Anthony Landingham within 90 days of our disciplinary order, and order him to pay the costs of these proceedings. The board further recommends that we condition Tregre's reinstatement to the profession on his completion of three hours of CLE focused on law-office management, in addition to the requirements of Gov.Bar R. X, and that upon his reinstatement, we require him to work with a monitoring attorney appointed by relator for a period of one year.

**{¶ 39}** Of the cases considered by the board, we find *Parkin*, *Berling*, and *Ludwig* to be most instructive.

**{¶ 40}** Parkin neglected three legal matters, failed to reasonably communicate with three clients, and failed to deposit unearned fees from eight clients into her client trust account. *Parkin*, 2018-Ohio-5093, at ¶ 6, 12, 15, 19, 21, 25. Like Tregre, Parkin failed to return papers, property, or unearned fees, although Parkin's failures affected three clients while Tregre's affected just two. *Id*. at ¶ 12, 19, 21. And while Parkin did not engage in conduct prejudicial to the administration of justice, as Tregre did here, she engaged in dishonesty by making a false representation to a court, failed to inform a client of the possibility that he could be entitled to a full or partial refund of a flat fee if she did not complete the representation, and failed to inform six clients that she did not maintain

professional-liability insurance. *Id*. at ¶ 6, 12, 15, 19, 21, 25. All told, Parkin committed 28 rule violations compared to Tregre's 24 rule violations in this case.

**{¶ 41}** As for aggravating and mitigating factors, Parkin, like Tregre, engaged in a pattern of misconduct, committed multiple offenses, acted with a dishonest or selfish motive, and harmed her clients, though she had no prior disciplinary record. *Id*. at ¶ 28-29. And even though Parkin accepted responsibility for only *some* of her misconduct and failed to acknowledge the negative impact that her misconduct had on her clients, *id*. at ¶ 28-29, she did not fail to cooperate in the disciplinary process as Tregre did here. Further, while there was some question as to whether Parkin owed a refund of $625 to a single client, *id.* at ¶ 36, that issue was not expressly included as an aggravating factor under Gov.Bar R. V(13)(B)(9) as it was in this case. We suspended Parkin from the practice of law for two years, required her to make restitution of $625, and conditioned her reinstatement on the completion of ten hours of CLE focused on client communication and law-office management. *Parkin* at ¶ 36. We also ordered her to serve a two-year period of monitored probation upon reinstatement to the profession. *Id*.

**{¶ 42}** Berling neglected eight separate client matters (compared to the five client matters that Tregre neglected in this case), *Berling*, 2020-Ohio-2838, at ¶ 6, 9, 14, 20, 23, 26, 29, 32, failed to reasonably communicate with five of those clients, *id.* at ¶ 6, 9, 14, 20, 23, and failed to deposit the unearned fees of four separate clients—totaling more than $10,000—into his client trust account, *id*. at ¶ 21, 24, 28, 30. In addition to engaging in two instances of conduct prejudicial to the administration of justice, like Tregre did here, Berling also engaged in two instances of dishonest conduct, solicited sexual activity from a client, failed to ensure that his employee's conduct was compatible with his professional obligations, and appeared on behalf of a client at two hearings in a jurisdiction in which he was not authorized to practice law. *Id*. at ¶ 9, 15-18, 20, 26, 29. All but one of the aggravating factors present in this case were present in *Berling*; Berling

was not found to have failed to cooperate in the disciplinary process. *Id*. at ¶ 35. Berling also refused to acknowledge the wrongfulness of his misconduct and attempted to minimize his behavior or shift blame to his clients and others. *Id*. And in addition to the mitigating factors present in this case, Berling submitted evidence of his good reputation. He also submitted some evidence that he suffered from several mental and physical disorders, but he did not submit sufficient evidence for this court to accord those disorders any mitigating effect under Gov.Bar R. V(13)(C)(7). *Id*. at ¶ 36.

{¶ 43} On those facts, we suspended Berling from the practice of law for two years, ordered him to make restitution totaling $30,200 to seven clients, and imposed conditions on his reinstatement to ensure that he was able to resume the competent, ethical, and professional practice of law. *Id*. at ¶ 41.

{¶ 44} In a similar fashion to Tregre, Ludwig neglected two client matters, failed to reasonably communicate with three clients, and failed to deliver a file and funds that one of her clients was entitled to receive. *Ludwig*, 2021-Ohio-3971, at ¶ 9-10, 15, 21. Ludwig also engaged in three instances of dishonest conduct in violation of Prof.Cond.R. 8.4(c)—a violation not present in this case. *Id*. at ¶ 10, 15, 21. Furthermore, Ludwig solicited and accepted substantial gifts from a client, *id* at ¶ 10, and she engaged in conduct that adversely reflected on her fitness to practice law by personally accepting retainers from clients who had signed fee agreements with the law firm that employed her without informing the law firm that those clients had hired the firm or paid retainers. *Id.* at ¶ 4, 10, 12, 15. Ludwig committed 19 rule violations in all.

{¶ 45} In addition to most of the aggravating factors present in this case, Ludwig's license to practice law had been suspended based on an attorney-registration violation for just over two years by the time we ruled on her disciplinary case. *Id*. at ¶ 1. In contrast, Tregre's clean disciplinary record is a mitigating factor here. Mitigating factors in *Ludwig* consisted of Ludwig's cooperation in the

disciplinary process, good-faith effort to make restitution—though it was not complete at the time of her disciplinary hearing—and evidence of her good character and reputation. *Id*. at ¶ 24-25. Here, Tregre testified that he considered asking federal and state-court judges, attorneys, and others to write letters on his behalf, but that he chose not to, partly due to embarrassment and partly because he "[couldn't] live with [his circumstances] even possibly tainting their reputations."

{¶ 46} We suspended Ludwig from the practice of law for two years, with credit for the time served under her attorney-registration suspension, and ordered her to make restitution of $316.50 to one of her clients. *Ludwig* at ¶ 30. After considering evidence that Ludwig had been diagnosed with depression but was unable to afford treatment and her own admission that she was not fit to practice law at the time of her disciplinary hearing, *id*. at ¶ 24, 29, we ordered that she be required to petition—rather than apply—for reinstatement and prove her fitness to resume the practice of law, *id*. at ¶ 30; *see* Gov.Bar R. V(24) and (25).

{¶ 47} Having independently reviewed the record and having considered Tregre's misconduct, the relevant aggravating and mitigating factors, and our precedent, we agree with the board's assessment that the facts of this case are most comparable to those of *Parkin*, *Berling*, and *Ludwig*. Because Tregre engaged in the competent, ethical, and professional practice of law for nearly 20 years before committing the charged misconduct, fully cooperated in the proceedings once relator filed the formal complaint, testified with great candor, and conveyed genuine remorse for his misconduct, we conclude that a two-year suspension, with the additional conditions recommended by the board, will protect the public from further harm.

## CONCLUSION

{¶ 48} Accordingly, Calvin Sylvester Tregre Jr. is suspended from the practice of law in Ohio for two years and ordered to make restitution of $2,500 to Mari Jo Hudgel and $2,250 to Anthony Landingham within 90 days of the date of

this court's order. In addition to the requirements of Gov.Bar R. V(24) and Gov.Bar R. X, Tregre's reinstatement shall be conditioned on the completion of three hours of CLE focused on law-office management. Upon reinstatement to the profession, Tregre shall be required to serve a one-year period of monitored probation in accordance with Gov.Bar R. V(21). Costs are taxed to Tregre.

Judgment accordingly.

_____

**KENNEDY, C.J., joined by DETERS, J., concurring in part and dissenting in part.**

{¶ 49} I agree with the majority opinion and the sanction of a two-year suspension of respondent, Calvin Sylvester Tregre Jr., from the practice of law as well as the requirement that he make restitution to two former clients. I part ways with the majority only with regard to the term of monitored probation. I would impose conditions on the monitored probation. Because the majority does not, I dissent in part for the reasons set forth in *Disciplinary Counsel v. Halligan*, 2019-Ohio-3748, ¶ 41-45 (Kennedy, J., concurring in part and dissenting in part).

{¶ 50} I would impose the following conditions on Tregre's one-year period of monitored probation: (1) each month, Tregre shall give the monitoring attorney copies of all new or modified fee agreements that he enters into with clients so that the monitoring attorney can review them; (2) each month, Tregre shall give the monitoring attorney his Interest on Lawyers' Trust Account ("IOLTA") statements so that the monitoring attorney can review them; (3) each month, disciplinary counsel or the monitoring attorney shall randomly review files of Tregre's active cases to ensure his compliance with the Rules of Professional Conduct; (4) Tregre, with the monitoring attorney, shall design a comprehensive plan to ensure that he is reasonably diligent in the representation of his clients; and (5) Tregre shall complete three hours of continuing legal education on IOLTA maintenance. In the event that Tregre does not act with reasonable diligence in representing his clients,

disciplinary counsel or the monitoring attorney may limit the number of active cases that he is allowed maintain.

{¶ 51} Because the majority imposes no conditions on the monitored probation, I dissent in part.

_____

Joseph M. Caligiuri, Disciplinary Counsel, and Michelle A. Hall and Melanie J. Williamson, Assistant Disciplinary Counsel, for relator.

Calvin Sylvester Tregre Jr., pro se.

_____